UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DERRICK JAMES ROBINSON,

    Plaintiff,

v.                       CASE No. 8:12-CV-2765-T-TGW

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

_____

O R D E R

    The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

I.

    The plaintiff, who was forty-three years old at the time of the administrative decision and who has an eighth grade education (Tr. 46), has

_____

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

worked most significantly as a pipe fitter helper (Tr. 57) and for a moving company (Tr. 220). He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled due to HIV and neuropathy (Tr. 219). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of "lumbar degenerative disc disease, hypertension, HIV/AIDS with neuropathy and fatigue syndrome, obesity, history of gunshot wound to the chest, borderline intellectual functioning, and anti-social personality disorder" (Tr. 24). As a result of these impairments, the law judge found further (Tr. 27):

> [T]he claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour day, sit for a total of about 6 hours in an 8-hour day, and frequently climb, balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, etc., and hazards. The claimant is limited to performing simple, routine, repetitive tasks in a work environment where there would be only occasional contact with the general public.

The law judge concluded that these limitations prevented the plaintiff from performing past work (Tr. 31). However, based upon the testimony of a vocational expert, the law judge determined that jobs exist in significant numbers in the national economy that the plaintiff could perform, such as small products assembler, parking lot attendant, and hand packer (Tr. 32). Accordingly, the law judge decided that the plaintiff was not disabled. The Appeals Council let the decision of the law judge stand as the final decision of the defendant.

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence.  <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff challenges the law judge's decision on three grounds. Specifically, he asserts that (1) the law judge erred in giving no significant weight to the opinions of Tracey G. Henley, Psy.D., an examining psychologist; (2) the law judge failed to consider the side effects of the plaintiff's medications; and (3) the law judge's credibility determination was improper. None of those contentions warrants reversal.

A. The plaintiff contends, first, that "[t]here was not substantial evidence to support the ALJ's findings that Dr. Henley's opinion should be

given no weight" (Doc. 16, p. 11). The short answer to this contention is that the record contained a range of opinions regarding the plaintiff's mental status, with Dr. Henley's opinion at one end of the range, two opinions of no severe mental impairment by nonexamining reviewing psychologists at the other end, and with several opinions in the middle. Consequently, the other opinions clearly provide substantial evidence to discount Dr. Henley's opinion.

Moreover, it is appropriate to add that the law judge did not state he was giving Dr. Henley's opinion "no weight," as the plaintiff several times asserts. Rather, he simply said he was not giving "significant weight" to the opinion (Tr. 30). Further, he expressly gave weight to Dr. Henley's assessment of no limitation in carrying out simple instructions in his determination that the plaintiff had no more than moderate difficulties in concentration, persistence, or pace (Tr. 26).

Dr. Henley was not a treating doctor, but saw the plaintiff only once. Dr. Henley submitted a psychological evaluation report that diagnosed the plaintiff with anxiety disorder NOS, antisocial personality disorder, and borderline intellectual functioning (Tr. 569). The law judge agreed with the

assessments of antisocial personality disorder and borderline intellectual functioning and found that they were severe impairments (Tr. 24). The law judge expressly rejected Dr. Henley's diagnosis of anxiety disorder, explaining that "there was no significant anxiety observed by Dr. Henley during mental status examination or anywhere else in the record" (Tr. 30). The plaintiff has not cited to any evidence in the record indicating that the law judge erred in his explanation for rejecting Dr. Henley's diagnosis of anxiety disorder. Thus, the law judge accepted two of Dr. Henley's three diagnoses, and reasonably rejected the third.

Furthermore, Dr. Henley's evaluation report simply set forth her diagnoses and did not opine any functional limitations regarding the plaintiff's ability to perform substantial gainful activity. However, Dr. Henley also submitted a Medical Source Statement of Ability to Do Work-Related Activities (Mental) (Tr. 562). On that form, Dr. Henley indicated that the plaintiff had no limitations concerning simple instructions and had moderate limitations in his ability to make judgments on simple work-related decisions (id.). Dr. Henley checked further on that form that the plaintiff had marked limitations regarding complex instructions (id.). These opinions are

consistent with the law judge's determination that the plaintiff was "limited to performing simple, routine, repetitive tasks" (Tr. 27).

Dr. Henley also checked that the plaintiff has marked limitations regarding interacting appropriately with the public, supervisors, and co-workers (Tr. 563). The law judge accommodated these limitations to some extent by restricting the plaintiff to "a work environment where there would be only occasional contact with the general public" (Tr. 27). To the extent that the law judge did not fully accept Dr. Henley's opinions regarding the plaintiff's interaction with others, he amply and reasonably explained his basis for discounting those opinions.

Thus, in a portion of the detailed assessment of Dr. Henley's report and statement (see Tr. 25, 26, 30), the law judge said (Tr. 30):

> Dr. Henley opined that the claimant was markedly limited in ability to understand, remember, and carry out detailed instructions, make judgments on complex work-related decisions, and interact appropriately with the public, co-workers, and supervisors and moderately limited in ability to make judgments on simple work-related decisions and respond appropriately to usual work situations (Exhibit B16F). No significant weight is accorded this opinion as a good deal of the opinion is based on the claimant's reports of his history and his subjective symptoms, not objective examination

findings, and Dr. Henley noted multiple inconsistencies in the examination and poor effort on the part of the claimant. The examination and Dr. Henley's conclusions are also inconsistent with the findings of Dr. [Henry L.] Dee, Dr. [Robert G.] Moering, and treating physician Dr. [Billy] Kong and Dr. Moering suspected exaggeration of symptoms by the claimant.

The law judge pointed out that Dr. Dee, a psychologist, examined the plaintiff in April 2008 and "found the claimant to have normal cognitive skills, normal abstracting ability, intact memory, normal attention and concentration, and average estimated intelligence and made no mental health diagnosis" (Tr. 29). In other words, Dr. Dee concluded that the plaintiff had no Axis I diagnosis, with no apparent primary diagnosis which should be ruled out, and no Axis II diagnosis (Tr. 342).

The law judge also relied upon the report of Dr. Moering, a psychologist who examined the plaintiff on July 21, 2010 (Tr. 29). The law judge noted that "Dr. Moering found the claimant to have normal speech, no delusions or hallucinations, no memory deficit ..., and average estimated intelligence" (id.). The law judge stated further that "[t]est scores were indicative of malingering and exaggeration of symptoms and Dr. Moering diagnosed only anti-social personality disorder" (id.).

The law judge, in addition, considered a statement from Dr. Kong, the plaintiff's primary care physician. Dr. Kong, on July 12, 2010, said that the plaintiff does not "suffer[] from a mental impairment that significantly interferes with daily functioning" (Tr. 393).

In light of this evidence, the law judge could reasonably conclude that "Dr. Henley's conclusions are ... inconsistent with the findings of Dr. Dee, Dr. Moering, and treating physician Dr. Kong" (Tr. 30). This conclusion, moreover, provides ample basis for the law judge to discount Dr. Henley's opinion – to the extent he even did so.

In light of the abundant opinion evidence contrary to Dr. Henley's opinion, the plaintiff's criticism of the law judge's discounting of that opinion is unpersuasive. The plaintiff argues that the law judge erroneously discounted Dr. Henley's opinion because it was based on the plaintiff's reports of his history and his subjective symptoms (Doc. 16, p. 12). He contends that such information is what psychologists normally rely upon. However, the law judge could reasonably conclude that the plaintiff's reported history and symptoms were not credible and were exaggerated. As shown in connection with the plaintiff's third issue, that credibility

determination is reasonable and adequately explained.  Moreover, a hospital note characterized the plaintiff as a "vague historian" (Tr. 485). Consequently, the law judge could reasonably decline to accept fully an opinion that was based on information that he found was not credible.

For these reasons, the plaintiff's challenge to the law judge's assessment of Dr. Henley's opinion fails.

B. The plaintiff contends, second, that the law judge "did not consider the side effects of Mr. Robinson's medications, as required under SSR 96-8P" (Doc. 16, p. 15).  The only side effects the plaintiff mentions on this issue are fatigue and sleepiness (id.).

The law judge expressly considered those alleged side effects. Thus, the law judge stated (Tr. 28):

> Dr. Kong noted that the claimant would experience only occasional fatigue and sleepiness due to his medication and no other significant side effects were documented. The most recent treatment notes reflect that the claimant denied any fatigue.

The law judge also pointed out that "treating physician Dr. Kong did not restrict the claimant's activities in any way, but rather advised the claimant to exercise and maintain his physical activity" (Tr. 29).

These statements show that the law judge appropriately considered allegations of fatigue and sleepiness due to medications. Moreover, they adequately justify discounting those allegations.

The plaintiff contends that the law judge should not have considered the last treatment note of April 12, 2011, because it merely consisted of a line drawn through a number of conditions, including fatigue (Doc. 16, p. 16). However, the law judge could reasonably accept that marking as an indication that Dr. Kong did not observe fatigue. Moreover, the plaintiff underwent a stress test on March 2, 2011, due to complaints of chest pain and he "did not complain of any ... fatigability while being exercised" (Tr. 536).

The plaintiff tags on to this issue statements about the law judge's duty to develop the record (Doc. 16, p. 16). However, he does not explain what those principles have to do with the contention about medication side effects. Further, even if he had, the contention would be forfeited because it would violate the demands of the Scheduling Order and Memorandum Requirements to "identify with particularity the discrete grounds upon which the administrative decision is being challenged" and to

support those challenges "by citations to the record of the pertinent facts" (Doc. 14, p. 2).

C. The plaintiff's final issue is that the law judge's credibility determination was improper (Doc. 16, p. 16). This contention is unavailing.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and he referred to the pertinent regulations and Social Security rulings (Tr. 27). He even acknowledged the need to satisfy the requirements of Eleventh Circuit case law (id.). This demonstrates that the law judge employed the proper principles. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

The law judge accepted the plaintiff's testimony to some extent. Thus, he found that the plaintiff's impairments limited him to a range of light work. However, he rejected the plaintiff's allegation of total disability.

The law judge explained his credibility finding as follows (Tr. 30-31):

> Weighing against the claimant's credibility in this case are several factors. There were multiple inconsistencies in the record with regard to the claimant's educational level, history, and reported functioning. He reported attending school to the 9th grade, to the 8th grade, and completing a GED (Exhibit[s] B2E, B6F, B16F). He reported a history of special education and denied a history of special education (Exhibit[s] B2E, B6F, B16F). The claimant reported dropping out of school due to frustration, anger, and fighting and dropping out due to the death of his grandmother (Exhibit[s]

B6F, B16F).   The claimant gave a history [of]
severe physical abuse when he was examined by
Dr. Henley, yet he denied any history of abuse
when he was examined by Dr. Moering (Exhibit[s]
B6F, B16F).  The claimant alleged that he needed
reminders to take his medication, yet he denied
needing reminders for medication when he was
examined by Dr. Henley (Exhibit[s] B12E, B16F).

For these reasons, to the extent that the claimant
has alleged such symptoms as would prevent him
from performing a wide range of light work, as
outlined above, the undersigned finds such
allegations not credible.

The plaintiff asserts that these matters are not really inconsistent

or could be easily explained (Doc. 16, pp. 17-19).   The law judge, however,

could reasonably think otherwise.  The plaintiff's attempted explanations for

the inconsistencies perceived by the law judge certainly do not compel the

conclusion that the plaintiff was fully credible.  See Adefemi v. Ashcroft,

supra.

Moreover, the law judge's decision provides further support for

his credibility finding.   Thus, the plaintiff's claim of total disability is

contradicted by his daily activities.  In this respect, the law judge stated (Tr.

30):

-15-

> The claimant and a friend reported that the claimant was still able to prepare simple foods, help with laundry and dishes, drive, shop, care for his 5-year old daughter, manage his finances, spend time with family and friends, get along with others, and follow instructions (Exhibit[s] B6E, B12E). The claimant told Dr. Moering that he watched his daughter during the day, visited with family, did chores, shopped, and was independent in self-care (Exhibit B6F). These activities are not inconsistent with a wide range of light work.

In addition, Dr. Moering tested the veracity of the plaintiff's subjective complaints about mental impairments (Tr. 401-03). Dr. Moering concluded that "[p]sychological testing indicated [the plaintiff] endorsed an overall level of symptomatology and impairment that is highly atypical of patients with genuine psychiatric or cognitive disorders, resulting in a high likelihood of feigning or symptom exaggeration" (Tr. 403). The law judge referred to this conclusion several times in his decision (Tr. 25, 29, 30). A blatant example of the plaintiff's exaggeration of symptoms is his testimony that he suffers from diarrhea all day every day (Tr. 51-52). Numerous treating notes and hospital reports show that the plaintiff was not then suffering from diarrhea (Tr. 372, 374, 378, 424, 473, 502, 540).

In sum, the law judge amply explained his credibility determination and his reasons are supported by substantial evidence. Accordingly, the law judge did not err in making his credibility finding.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 27 day of January, 2014.

_____
THOMAS  G.  WILSON
UNITED  STATES  MAGISTRATE  JUDGE

-17-